```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SHANG ZHONG CHEN, on behalf of himself and     :
others similarly situated,                     :
                                               :
                              Plaintiff,       :
                                               :                    MEMORANDUM & ORDER
              -against-                        :                    15-CV-7398 (DLI) (JO)
                                               :
KYOTO SUSHI, INC. d/b/a Kyoto Sushi;           :
ASQUARED GROUP, INC. d/b/a Kyoto Sushi; and    :
ANDY LEE,                                      :
                                               :
                              Defendants.      :
----------------------------------------------------------------x
```

**DORA L. IRIZARRY, Chief United States District Judge:**

On December 30, 2015, Plaintiff Shang Zhong Chen ("Chen") filed a Complaint on behalf of himself and others similarly situated, alleging that Kyoto Sushi, Inc., Asquared Group, Inc., and Andy Lee (hereinafter collectively the "Kyoto Defendants") violated certain provisions of the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL"), in addition to filing a fraudulent information return under 26 U.S.C. § 7434 and deceptive business practices under New York General Business Law § 349. *See generally*, Complaint ("Compl."), Dkt. Entry No. 1. On April 3, 2016, Shu Jun Ma ("Ma") and Shi Hang Wu ("Wu") each filed a "Consent to Become a Party in a Collective Action."[1] *See* Dkt. Entry Nos. 8, 10.

On September 15, 2016, Kyoto Defendants filed a Motion to Compel Arbitration and Dismiss the Complaint ("Motion to Compel"), relying upon an agreement the parties had signed in August 2015 that purportedly contained a binding arbitration clause ("Arbitration Agreement").

---

[1] On October 21, 2016, United States Magistrate Judge James Orenstein granted an application to conditionally certify this matter as a collective action. *See* Oct. 21, 2016 Min. Entry. However, this Court found the magistrate judge's decision premature in light of the pendency of the present motion and stayed further proceedings concerning class certification until the instant motion was resolved. *See* Oct. 24, 2016 Min. Entry. Nonetheless, to avoid confusion with the briefs, the Court will collectively refer to Chen, Ma, and Wu as "Plaintiffs."

*See* Mem. of Law in Supp. of Defs.' Mot. to Compel Arb. & to Dismiss the Compl. ("Mot."), Dkt. Entry No. 29. On September 29, 2016, Plaintiffs filed their opposition. *See* Mem. of Law in Opp. of Defs.' Mot. to Compel Arb. & to Dismiss the Compl. ("Opp."), Dkt. Entry No. 33. Kyoto Defendants filed their reply on October 6, 2016. *See* Reply Mem. of Law in Supp. of Defs.' Mot. to Compel Arb. & to Dismiss the Compl. ("Reply"), Dkt. Entry No. 34.

The Court held oral argument on Kyoto Defendants' motion on October 24, 2016 and reserved decision with this opinion to follow. *See* Oct. 24, 2016 Min. Entry. For the reasons set forth below, Kyoto Defendants' motion is granted, Plaintiffs' request for certification under 29 U.S.C. § 216(b) is denied, and this proceeding is administratively closed pending the resolution of arbitration.

## BACKGROUND

Plaintiffs are all former employees of Kyoto Sushi, a Japanese restaurant located in Queens, New York. *See* Mot., Decl. of Andy Lee ("Lee Decl.") at ¶¶ 1-4; Opp., Aff. of Shang Zhong Chen ("Chen Aff.") at ¶ 3; Opp., Aff. of Shi Hang Wu ("Wu Aff.") at ¶ 3; Opp., Aff. of Shu Jun Ma ("Ma Aff.") at ¶ 3; Compl. at ¶¶ 8, 21. In August 2015, Kyoto Defendants required Plaintiffs to sign the Arbitration Agreement as a condition of continued employment. *See* Chen Aff. at ¶¶ 5-6; Wu Aff. at ¶ 5; Ma Aff. at ¶ 5; Lee Decl. at ¶¶ 7, 8. Plaintiffs claim that they individually were called into their manager's office and directed to sign the Arbitration Agreement under pain of losing their jobs and having their wages withheld. *See* Chen. Aff. at ¶¶ 5-9; Wu Aff. at ¶¶ 6-7; Ma Aff. at ¶¶ 5-8. Plaintiffs insist that they did not understand what they signed. *See* Chen Aff. at ¶¶ 14-15, 17-19, 21-22; Wu Aff. at ¶¶ 10-12, 14, 16-18; Ma Aff. at ¶¶ 11-13, 16-18; *see also* Tr. of Oral Argument ("Oct. 2016 Tr."), at 5-6. Plaintiffs admit that they did not ask for time to review the contract or consult counsel. *See* Oct. 2016 Tr. at 6-7. Moreover, Wu and Ma concede that they

were "not suspicious" of the document when asked to sign it. *See* Wu Aff. at ¶ 15; Ma Aff. at ¶ 14.

The dispute hinges on Sections 2 and 4 of the Arbitration Agreement. Section 2 states:

> The parties to this Agreement agree that all "covered claims" that Employee may have against Employer (or its owners, directors, officers, managers, employees, or agents) or that Employer may have against Employee shall be submitted exclusively to and determined exclusively by binding arbitration in New York, New York under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, regardless of the substantive law applied in the arbitration.

Lee Decl., Ex. A at 1.[2] Defining "covered claims," Section 4 explains:

> The parties to this Agreement agree that "covered claims" include, but are not limited to, all claims that may arise as a result of the services Employee provides at Employer, including but not limited to all claims alleging discrimination, harassment, retaliation, and/or related to Employee's compensation for the services Employee performs at Employer, and specifically including any claim or cause of action alleging Employee is an employee of Employer and/or was improperly or insufficiently paid wages under the Fair Labor Standards Act ("FLSA") or any state or local wage and hour law, regardless of whether the covered claims arose or accrued prior or subsequent to Employee entering this Agreement.

*Id.* at 1-2.

Kyoto Defendants argue that the language quoted above requires Plaintiffs to arbitrate their FLSA and NYLL claims on an individual basis. *See generally*, Mot. In opposition, Plaintiffs argue that: (1) the Arbitration Agreement is unenforceable because it violates federal law; (2) the Arbitration Agreement is unconscionable under New York State law; (3) Plaintiffs signed the Arbitration Agreements as a result of economic duress; and (4) the FLSA claims should be collectively certified under 29 U.S.C. § 216(b). *See generally*, Opp.

---

[2] Exhibit A contains three executed copies of the Arbitration Agreement. *See* Lee Decl., Ex. A at 1-4 (Wu), 5-8 (Ma), 9-12 (Chen). For brevity, when referring to the Arbitration Agreement's terms, the Court cites only to the first complete copy contained in Exhibit A. The terms of the documents are identical.

## **DISCUSSION**

### I. THE LEGAL STANDARD

"The Federal Arbitration Act ('FAA') creates a body of federal substantive law of arbitrability applicable to arbitration agreements affecting interstate commerce." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (internal citations and quotation marks omitted). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). With this in mind, the Supreme Court has "repeatedly described the [FAA] as embodying a national policy favoring arbitration and a liberal federal policy favoring arbitration agreements." *Id.* at 346 (internal citations and quotation marks omitted); *See also Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (internal citations omitted).

"The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). If the Court is satisfied that the parties agreed to arbitration, it then must consider: (1) the "scope of that agreement;" (2) whether Congress intended the causes of action at issue to be "nonarbitrable;" and (3) if any claims are nonarbitrable, "whether to stay the balance of the proceedings pending arbitration." *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (internal citations). "In deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). This standard "requires a court to 'consider all relevant, admissible evidence submitted by the parties and contained in the pleadings,'" and other filings to the Court. *Id.* at 229 (quoting

4

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Id.* (internal citations omitted).

## II. THE ARBITRATION AGREEMENT

### A. Plaintiffs Consented to the Arbitration Agreement

The FAA permits denial of enforcement of an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, whether a valid arbitration agreement exists is a question of state contract law. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("Whether one can be bound by an arbitration clause is usually determined by looking at generally accepted principles of contract law.") (internal citations omitted); *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp.2d 439, 443 (S.D.N.Y. 2004) (quoting *First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Under general contract principles[,] a party is bound by the provisions of a contract that he signs unless he can show special circumstances that would relieve him of such an obligation." *Genesco, Inc. v. T. Kakiuchi & Co. Ltd.*, 815 F.2d 840, 845 (2d Cir. 1987) (internal citations omitted).

Here, Plaintiffs signed the Arbitration Agreement and thereby bound themselves its terms, "whether [they] read[] them or not. Ignorance through negligence or inexcusable trustfulness will not relieve . . . part[ies] from [their] contract obligations." *In re Level Export Corp. (Wolz, Aiken & Co.)*, 305 N.Y. 82, 87 (1953) (internal citations and quotation marks omitted).

### B. The FLSA and NYLL Claims Are Within the Scope of the Arbitration Agreement

Under the Arbitration Agreement, "covered claims" are subject to binding arbitration. Lee Decl., Ex. A at 1. The "covered claims" include "any claim or cause of action alleging Employee is an employee of Employer and/or was improperly or insufficiently paid wages under the Fair Labor Standards Act ('FLSA') or state or local wage and hour law." *Id.* at 1-2. This clause unequivocally encompasses Plaintiffs' FLSA and NYLL claims. *See Ciago v. Ameriquest*

5

*Mortgage Co.*, 295 F. Supp.2d 324, 331 (S.D.N.Y. 2003); *See also Mazza v. Special Touch Home Care Servs., Inc.*, No. 16-CV-1185 (ARR) (RLM), 2016 WL 6459623, at *2 (E.D.N.Y. Oct. 31, 2016); *Patterson v. Raymours Furniture Co., Inc.*, 96 F. Supp.3d 71, 78 (S.D.N.Y. 2015), *aff'd*, *Patterson v. Raymours Furniture Co., Inc.*, 659 F. App'x 40 (2d Cir. 2016) (Summary Order).

### C. The FLSA and NYLL Claims Are Arbitrable

Under the FAA, a court must "enforce agreements to arbitrate according to their terms. That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (internal citations and quotation marks omitted). In opposing arbitration, it is Plaintiffs' "burden to show that the legislatures intended to preclude arbitration for the NYLL and FLSA claims." *Salzano v. Lace Entm't, Inc.*, No. 13-CV-5600 (LGS), 2014 WL 3583195, at *3 (S.D.N.Y. Jul. 18, 2014) (internal citations omitted).

Plaintiffs do not claim that the FLSA and NYLL claims were nonarbitrable; rather, they contend only that the Arbitration Agreement violated federal law by preventing employees from pursuing a collective action and/or that the contract was violative of New York State law. *See* Opp. at 3-11. However, "[r]epeatedly[,] it has been found that individual agreements to arbitrate FLSA claims are enforceable." *Bynum v. Maplebear Inc.*, 160 F. Supp.3d 527, 539 (E.D.N.Y. 2016) (collecting cases); *See also Hodges v. All Transit LLC*, No. 13-CV-2587 (LDW) (ARL), 2014 WL 537748, at *1 (E.D.N.Y. Feb. 7, 2014) ("Plaintiffs' claims, including the FLSA claim, are arbitrable.") (internal citations omitted). Correspondingly, "in light of [the] conclusion that [Plaintiffs'] FLSA claim[s] must proceed in arbitration pursuant to the Federal Arbitration Act, so too must [their] NYLL claim[s]." *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 292 n.1 (2d Cir. 2013) (internal citation omitted); *See also Salzano*, 2014 WL 3583195, at *2 ("FLSA and

NYLL claims were not intended by the respective legislatures to be nonarbitrable.") (internal citations omitted).

### III.   PLAINTIFFS' ARGUMENTS AGAINST ENFORCING THE ARBITRATION AGREEMENT

#### A. *The Arbitration Agreement Does Not Violate Federal Law*

Plaintiffs argue that the Arbitration Agreement is unenforceable because: (1) it bars collective actions in violation of the National Labor Relations Act ("NLRA") (29 U.S.C. §§ 151-69) and the Norris-LaGuardia Act ("NLGA") (29 U.S.C. §§ 101-15); and (2) they cannot waive their right to pursue a collective action under the FLSA. *See* Opp. at 4-8. The Court disagrees.

In pertinent part, the NLRA grants employees the right to "engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. The NLRA also makes it an "unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1). Echoing these ideas, the NLGA recognizes that employees "shall be free from the interference, restraint, or coercion of employers . . . in . . . concerted activities for the purpose of collective bargaining or other mutual aid and protection." 29 U.S.C. § 102. The NLGA also warns that "[a]ny undertaking or promise . . . in conflict with the public policy declared in section 102 of this title . . . shall not be enforceable in any court of the United States." 29 U.S.C. § 103.

In support of their arguments, Plaintiffs rely predominately on *D.R. Horton, Inc.*, 357 N.L.R.B. No. 184, 2012 WL 36274 (N.L.R.B. Jan. 3, 2012). In that case, the National Labor Relations Board ("NLRB") determined that an agreement prohibiting employees from filing collective claims against their employer as to their wages, hours, or working conditions "unlawfully restrict[ed] employees' [NLRA] right to engage in concerted action for mutual aid or protection." *D.R. Horton, Inc.*, 2012 WL 36274, at *1. Plaintiffs maintain that this NLRB decision

7

found the NLGA's protections of collective bargaining rights to be *in pari materia* with the corresponding protections in the NLRA. Opp. at 5-6.

However, the Court of Appeals for the Second Circuit has held that "the FLSA does not include a 'contrary congressional command' that prevents the underlying arbitration agreement from being enforced by its terms." *Sutherland*, 726 F.3d at 297 (discussing an agreement requiring arbitration of FLSA claims on an individual basis). Furthermore, in *Sutherland*, the Circuit expressly rejected the argument that federal courts should defer to, or follow the reasoning of, the NLRB's decision in *D.R. Horton, Inc*. *Id*. at 297 n.8.

As for their claim that they cannot contract away their right to a collective action under the FLSA, Plaintiffs exclusively rely on *Raniere v. Citigroup Inc.*, 827 F. Supp.2d 294 (S.D.N.Y. 2011). *See* Opp. at 7-8. The court in that case held that "a waiver of the right to proceed collectively under the FLSA is unenforceable as a matter of law . . . ." *Raniere*, 827 F. Supp.2d at 314 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). However, three days after issuing its decision in *Sutherland*, the Circuit reversed the holding in *Raniere*, explaining that the district court's conclusion was "foreclosed by [the] recent decision in *Sutherland*." *Raniere v. Citigroup Inc.*, 533 F. App'x 11, 13 (2d Cir. 2013) (Summary Order). Since then, the Second Circuit unambiguously has reaffirmed that *Sutherland* is binding in this Circuit "until such time as it is overruled either by an *en banc* panel of [the Second Circuit] or by the Supreme Court." *Patterson*, 659 F. App'x at 43 (internal citations and quotation marks omitted).

Accordingly, the Court finds that the Arbitration Agreement does not violate federal law.

### B. The Arbitration Agreement Is Not Unconscionable Under New York State Law

Plaintiffs also contend that the circumstances surrounding the execution of the Arbitration Agreement are unconscionable under New York State law because they: (1) were required to sign

8

it as a condition of continued employment; (2) had limited education; (3) did not understand English; (4) and faced a clear inequality of bargaining power. *See* Opp. at 9-11.

In order to establish unconscionability under New York law, "there must be a showing that such a contract is both procedurally and substantively unconscionable." *Ragone*, 595 F.3d at 122 (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp.2d 566, 571 (S.D.N.Y. 2009)). As such, even if the Court were to assume, *arguendo*, that Plaintiffs established procedural unconscionability, they do not contend that any part of the Arbitration Agreement was substantively unconscionable. *See generally*, Opp. Indeed, Plaintiffs' counsel conceded this point at oral argument and declared, "It is not [P]laintiffs' position [that] there is . . . substantive unconscionability in the agreement itself." Oct. 2016 Tr. at 8. Concededly then, the Arbitration Agreement is not unconscionable.

## C. *The Arbitration Agreement Is Not the Product of Economic Duress*

Plaintiffs also claim that the Arbitration Agreement is unenforceable because it was the product of economic duress. *See* Opp. at 8-9. Under New York law, "[a] contract or release, the execution of which is induced by duress, is voidable, not void, and the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *DiRose v. PK Mgmt. Corp.*, 691 F.2d 628, 633-34 (2d Cir. 1982) (collecting cases). In order to show economic duress, Plaintiffs must claim: "(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no alternative." *Cavelli v. New York City Dist. Council of Carpenters*, 816 F. Supp.2d 153, 162 (E.D.N.Y. 2011) (quoting *Kamerman v. Steinberg*, 891 F.2d 424, 431 (2d Cir. 1989)). The benchmark of a proper showing is high; the "mere demonstration of financial pressure or unequal bargaining power will not, by itself, establish economic duress." *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (internal citations omitted). Agreements

9

are voided as a result of economic duress only in "extreme and extraordinary circumstances." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 123 (2d Cir. 2001). Moreover, if Plaintiffs possessed "an adequate legal remedy, [they] cannot claim economic duress." *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, No. 08-CV-11365 (RJH), 2010 WL 1257300, at *11 (S.D.N.Y. Mar. 31, 2010) (internal citations omitted).

The alleged duress consisted of threats to unlawfully withhold pay and terminate Plaintiffs if they did not sign the Arbitration Agreement. *See* Opp. at 8-9; Chen Aff. at ¶¶ 7-8; Wu Aff. at ¶¶ 5-6; Ma Aff. at ¶¶ 6-7; Oct. Tr. at 7-8. Plaintiffs claim they did not understand the gravity of what they were signing. *See* Opp. at 9; Chen Aff. at ¶¶ 15, 17-19, 21-22; Wu Aff. at ¶¶ 10-12, 14, 17; Ma Aff. at ¶¶ 11-13, 16, 18. Yet, Wu and Ma go so far as to indicate signing an agreement like the one currently at issue was nothing unusual (Wu Aff. at ¶ 15, Ma Aff. at ¶ 14), and counsel acknowledged that no Plaintiff asked for time to review the terms of the contract (Oct. 2016 Tr. at 6-7). These circumstances and the alleged threats to withhold pay or termination do not rise to the level of economic duress. Assuming Kyoto Defendants made those threats, while Plaintiffs may have been faced with a difficult choice, "difficult choices do not constitute duress." *Joseph v. Chase Manhattan Bank, N.A.*, 751 F. Supp. 31, 36 (E.D.N.Y. 1990). Furthermore, if Kyoto Defendants unlawfully withheld wages, Plaintiffs would have recourse under both federal and state law. *See, e.g.*, 29 U.S.C. § 216(b); N.Y. LAB. LAW §§ 191(3), 195, 198. This is fatal to Plaintiffs' claims. "While the Court is sympathetic to [Plaintiffs'] needs to buy groceries and pay rent, that need is legally inadequate to state a claim of duress." *Farrell v. Title Assocs., Inc.*, No. 03-CV-4608 (GWG), 2004 WL 5131862, at *6 (S.D.N.Y. Feb. 20, 2004) (internal citations omitted); *See also Pallonetti v. Liberty Mut.*, No. 10-CV-4487 (RWS), 2011 WL 519407, at *5 (S.D.N.Y. Feb. 11, 2011) (rejecting plaintiff's claim of economic duress, in part, because she could have refused

to sign an agreement and pursued her legal remedies); *Shain v. Ctr. for Jewish History, Inc.*, No. 04-CV-1762 (NRB), 2006 WL 3549318, at *5 (S.D.N.Y. Dec. 7, 2006) (explaining that "the law is clear that the mere inability to pay one's bills is not enough to demonstrate a lack of a practical alternative to signing" a contract) (internal citations omitted); *Bachiller v. Turn on Prods., Inc.*, No. 00-CV-8701 (JSM), 2003 WL 1878416, at *4 (S.D.N.Y. Apr. 14, 2003) (conditioning vacation pay on execution of a release did not leave a plaintiff without recourse).

### IV. THE CLAIM FOR A VIOLATION OF 26 U.S.C. § 7434[3]

The Complaint contains one federal cause of action that Kyoto Defendants do not seek to arbitrate: "Count X," a claim for the fraudulent filing of information returns under 26 U.S.C. § 7434. That statute states, in pertinent part, "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." § 7434(a). An "information return" includes the annual W-2 Form. *See* 26 U.S.C. §§ 6724(d)(1)(A)(vii), 7434(f); *See also* 26 C.F.R. § 1.6041-2. This claim may only exist when a defendant "*willfully files* a fraudulent information return." *Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568 (2d Cir. 2011) (internal citations and quotation marks omitted) (emphasis in original). Chen fails to state this claim.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard under Rule 8 does not require "detailed factual allegations," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

---

[3] Plaintiffs sought only to certify a collective action for the FLSA claims. *See* Opp. at 11-12; *See also* Ltr. Mot. to Certify FLSA Collective Action, Dkt. No. 26. Accordingly, the Court refers only to Chen when discussing the § 7434 and remaining state law claims.


accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted). This standard imposes a burden on federal plaintiffs to make factual allegations that support the asserted claim for relief.

Furthermore, a defendant need not move under 12(b)(6) for a claim to be dismissed under that provision; this Court possesses the authority to dismiss an action *sua sponte* for failure to state a claim "so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (internal citations and quotation marks omitted). Chen was given such an opportunity in connection with this claim. In an Order dated November 7, 2016, the Court noted that the Complaint lacked "any factual allegation that any individual or agent filed any document," and ordered Chen to explain why this claim should not be dismissed under Rule 12(b)(6). *See* Nov. 7, 2016 Min. Entry; *See also Mentuhotep v. New York City Police Dep't*, No. 16-CV-2871 (GBD) (GWG), 2016 WL 3522279, at *1 n.1 (S.D.N.Y. Jun. 22, 2016). He filed his response on November 14, 2016. *See* Ltr. to the Ct. re Ct. Order ("Chen Ltr."), Dkt. Entry No. 41.

Chen's response failed to salvage his claim. Aside from the conclusory allegation that Kyoto Defendants violated 26 U.S.C. § 7434, there is no mention, anywhere in the Complaint, that any documents were filed. *See* Compl. at ¶¶ 102-03. Chen argued that the claim should not be dismissed because the Complaint contains "an inference that [Kyoto] Defendants filed fraudulent tax returns." Chen Ltr. at 3. Allegedly, this "inference" arises from the claims that Kyoto Defendants failed to pay Chen regular or overtime wages, failed to maintain full and accurate

records of his hours and wages, and failed to provide him with any paystubs. *Id.* (citing Compl. at ¶¶ 38-39, 41, 43). However, there are no factual allegations in the Complaint that anyone filed anything, anywhere, with any agency. *See generally*, Compl. As it stands, the Complaint sits in limbo and permits dual inferences that fraudulent information returns may or may not have been filed. As Chen recognized, this is insufficient to state a claim because failing to file an information return does not, in itself, give rise to a claim under 26 U.S.C. § 7434. *See* Chen Ltr. at 3.

In this situation, the facts "do not permit the [C]ourt to infer more than the mere possibility of misconduct," and because of that, the Complaint "has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). Accordingly, this claim is dismissed with prejudice. Additionally, leave to amend the Complaint is denied. Chen was given the opportunity to provide a factual basis for his claim and failed to do so. *See* Nov. 7, 2016 Min. Entry; Chen Ltr.

## V. THE PENDENT STATE LAW CLAIM

"It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) (internal citations omitted). "[D]istrict courts should balance the values of judicial economy, convenience, fairness, and comity" in assessing whether to exercise jurisdiction over state law claims. *Id.* (internal citations omitted). Upon consideration of these factors, the Court declines to exercise supplemental jurisdiction over the remaining state law claim for deceptive business practices and it is dismissed without prejudice. *See Rennalls v. Alfredo*, No. 12-CV-5300 (KMK), 2015 WL 5730332, at *12 (S.D.N.Y. Sept. 30, 2015) ("[I]t is within the Court's discretion

whether to exercise supplemental jurisdiction over Plaintiff's state law claims.") (internal citations and quotation marks omitted).

### VI. THE FLSA CLAIMS ARE NOT CONDITIONALLY CERTIFIED

The last issue for this Court's consideration is the request to certify the FLSA claims under 29 U.S.C. § 216(b). Based upon the findings set forth above, all Plaintiffs signed the binding valid Arbitration Agreement, and thereby agreed to arbitrate their FLSA claims on an individual basis. Therefore, Plaintiffs' request is denied. *See Dixon v. NBCUniversal Media, LLC*, 947 F. Supp.2d 390, 405-06 (S.D.N.Y. 2013).

### CONCLUSION

For the reasons set forth above, Kyoto Defendants' Motion to Compel is granted and the request to conditionally certify a class is denied. Plaintiffs' FLSA and NYLL claims shall proceed to arbitration as required by the Arbitration Agreement and the remaining claims are dismissed, without prejudice. Chen's claim pursuant to 26 U.S.C. § 7434 is dismissed with prejudice, and leave to amend the Complaint is denied. This case is administratively closed pending the resolution of arbitration.

Any party wishing to challenge the arbitration decision must do so within thirty (30) days thereof and move to reopen the case.

SO ORDERED.

Dated: Brooklyn, New York
September 22, 2017

/s/
DORA L. IRIZARRY
Chief Judge